THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MELITÓN MUÑIZ SANTOS and ETANISLAO LUGO, Defendants and Appellants.

No. 15704. Argued December 3, 1954.—Decided January 25, 1955.

*Práxedes Alvarez Leandri* for appellants. *J. B. Fernández Badillo, Acting Attorney General,* and *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered de opinion of the Court.

Melitón Muñiz Santos, Etanislao Lugo and fourteen other persons were jointly charged with six crimes of assault with intent to commit murder, in that on or about October 30, 1950, in Peñuelas, Puerto Rico, and when a group of policemen from the Insular Police was going to ward Macaná of that town to execute a search warrant, the aforesaid defendants "acting in concert and in common agreement, unlawfully, wilfully, with malice, premeditation, deliberation and with the resolute and deliberate intent of killing them unlawfully . . . by means of ambush and by using incendiary bombs, revolvers and pistols, and deadly weapons, assaulted the aforesaid insular policemen," wounding six of them.[1]

They were jointly tried before a jury, which found them all guilty on six charges of assault with intent to commit manslaughter. Melitón Muñiz Santos and Etanislao Lugo took the present appeal.

In the first place, appellants allege that the trial court erred seriously in limiting each and every one of the

---

[1] Hipólito Ortiz, Corporal; Ismael Lugo, Lieutenant; José A. García, Enrique Alvarado, Francisco Miranda and Ignacio Díaz, all plain policemen.

defendants to only six peremptory challenges when they were six different defendants with adverse interests and represented by different attorneys. We do not agree. Section 209 of the Code of Criminal Procedure provides that "When several defendants are tried together they can not sever their challenges, but must join therein." Since this is a case of a crime not punishable with life imprisonment in the penitentiary, appellants were entitled solidarily to only six peremptory challenges. Section 223 of the Code of Criminal Procedure; *People* v. *McCalla, et al.*, 8 Cal. 301; Annotation in 136 A.L.R. 450.

The amendment to § 238 of the Code of Criminal Procedure [2] does not help appellants at all. It had no other purpose than to deprive defendant, who is jointly charged with others with having committed a felony, of the right to demand a separate trial and, on the contrary, to provide that all the defendants—in felony as well as misdemeanor cases—should be tried jointly except where the court orders separate trials. The interpretation of a provision identical to §238 of our Code of Criminal Procedure, as amended by the aforesaid Act No. 1 of November 10, 1950, was considered in *People* v. *Dowell*, (1928) 204 Cal. 109, cert. den. 278 U. S. 660. It was decided in that case that if the court denied a separate trial, the fact that defendants were compelled to make peremptory challenges collectively in the joint trial did not have the effect of denying defendants their proper quota of challenges, or of unconstitutionally depriving them of any other right. It is clear to us that if the Legislature had the intention of grant-

---

[2] The aforesaid § 238, as amended by Act No. 1 of November 10, 1950, (Spec. Sess. Laws, p. 310) provides:

"Section 238.—When two or more defendants have been jointly charged with any public offense they shall be tried jointly unless the court shall direct separate trials. In directing separate trials, the court may, in its discretion, direct a separate trial for one or more of the defendants, and a joint trial for the rest of the defendants; or it may direct that any number of the defendants be tried in a single trial and any other number of the rest of the defendants be tried separately; or it may direct a separate trial for each one of the defendants."

ing a defendant the right of separate peremptory challenges when tried jointly with other defendants, it would have so provided by amending the aforesaid § 209. It did not do so. Therefore, it is the law, and such is the will of the Legislature, that when several defendants are tried jointly they can not make separate challenges, but must join in their challenges. The right of peremptory challenges is a purely legislative privilege which may be regulated by the Legislature in the manner that it deems best. 50 C.J.S. 1070; *Estep* v. *State*, 245 S. W. 2d 623; *People* v. *Lobel*, 82 N. E. 2d 142; *Hayes* v. *State of Missouri*, 120 U. S. 68; *State* v. *Springer*, 239 P. 2d 944. Our Legislature has regulated the exercise of that right in the manner indicated above.

Defendants go still further and allege that since they were charged with six crimes in the information, they had a right to six peremptory challenges for each crime. Again we do not agree. The fact that an information contains several counts does not entitle accused to any additional peremptory challenges even though the different counts charge separate and distinct offenses which may be joined in the same information. 50 C.J.S. § 281 (4), p. 1077; 3 Wharton's *Criminal Procedure* (10th. ed.) § 1549; *State* v. *Compton*, 257 P. 2d 915; *People* v. *Vorio*, 2 N.Y.S. 2d 611.

In the second assignment of error the verdict is attacked as being contrary to law. Defendants assume the position that since one of them, Etanislao Lugo, was not present at the place of the occurrence and the other, Melitón Muñiz, arrived at said place after the six members of the police mentioned in the information had been wounded, they could not be convicted of the charge of assault with intent to commit manslaughter. They argue that "... common agreement, malice, premeditation, and deliberation are elements which are at play and always present in a case of murder" but not so in manslaughter which is committed without malice and in heat of passion or a sudden quarrel, and that the absence of defendants from the place of the occurrence fore-

closes the possibility of heat of passion or a sudden quarrel. They conclude that the verdict against Lugo should be one of assault with intent to commit murder or one of acquittal and that the only verdict that lies against Muñiz is aggravated assault or acquittal.

The fallacy of this argument lies in that appellants were not accused of assault with intent to commit manslaughter, but of assault with intent to commit murder. If the People introduced sufficient evidence to warrant a verdict of conviction of the crime charged in the information and assuming that the judge erred in instructing the jury on the lesser offense of assault with intent to commit manslaughter and, as a result, the jury rendered a verdict for the lesser offense, it is not a prejudicial error which would render the verdict void or entail the reversal of the judgment. *People* v. *Blanco*, *ante*, p. 726.

█ █ This brings us to consider the third and fourth errors, which relate to the sufficiency of the evidence. This, in general terms and as summarized by the *Fiscal* of this Court, is as follows:

"The evidence of the prosecution presented at the trial showed that the justice of the peace of Peñuelas issued a search warrant to search the residence of Mrs. Tomasa widow of Muñiz in the ward Macaná of said town, (T. E. 163). In order to execute the warrant several policemen on October 30, 1950, about 4:00 and 4:30 a.m. went towards said ward; (T. E. 163, 192, 218, 235, 252, 267, 308, 309); that upon arriving at the place known as 'El Culto' the policemen alighted from their vehicles and when they started to descend by foot, 'in a single line' through a small path which leads to the house about to be searched, defendants, (except the two appellants herein who were not present) who were lying in ambush at the left-hand side of the path, protected by the darkness of the night and a sugar cane plantation, started shooting at the policemen. (T. E. 179, 195, 218, 219, 235, 236, 252, 253, 267, 268, 269, 309, 310, 311.) As a result of those shots the following policemen were wounded: Hipólito Ortiz, Ismael Lugo, José A. García, Enrique Alvarado, Ignacio Ortiz (sic) and Francisco Miranda.

"With regard to appellants herein, the evidence of the prosecution tended to show that although they were not at the place of the occurrence and did not participate in the physical consummation of the crime charged, they were its intellectual authors."

As for appellant Melitón Muñiz, the evidence of the prosecution also reveals the following: that on October 29, 1950, about ten o'clock p. m., Melitón arrived at his mother's house, which is about an hour and a half on foot from the place where the skirmish took place; that he was accompanied by other persons who were carrying three packages and that all of them slept that night at the house of Melitón's mother. On October 30, about four o'clock in the morning, Melitón was seen by the police in the company of González Ubiles and another person sitting on a wall which is about 25 feet from the place of the skirmish. When the nationalist Mariano Rodríguez arrived at the ward "El Culto" at dawn on October 30, he found Melitón in the highway with a revolver in his hand and the latter ordered him to put several packages, rifles, carbines, and sabers inside his automobile. Next he ordered the nationalists who were armed to go with him in the automobile and they did so. After the skirmish had started and while the police was still answering the sporadic shots fired by the nationalists, Melitón arrived at the place of the occurrence in an automobile and started shooting with a revolver against the jeep where several policemen were hiding. The policemen fired back and ordered Melitón to surrender, which he did, throwing his revolver out in the highway. When he was arrested in that place they seized on his person two boxes of long bullets, 38 caliber, which contained a total of 81 bullets, and the revolver which he had used in the shooting. There Melitón admitted to Lieutenant Angel Ortiz, that it was a general movement throughout the Island and that it was not confined to Peñuelas.

The evidence as a whole is sufficient to support the count with which appellant is charged herein. The facts, as proved,

tend to show that the attack against the police force was part of a plan and that Melitón was one of the leaders of that plan. His participation was confirmed when, upon arriving at the place of the occurrence, he joined his companions in attacking the police force.   Hence it is clear that in the aforesaid attack Melitón acted in concert and common agreement and he is therefore as responsible as his companions.   See *People* v. *Hernández, ante,* p. 437.

▮ Now, as to the other appellant, the evidence establishes only the following facts: Lugo is a member of the Nationalist party and lives on Jobos Street in Ponce.   On October 28, 1950, González Ubiles asked Román Cortés Hernández to lend his automobile to Lugo.   Cortés took his vehicle and parked it a short distance from Lugo's residence where he left it but he did not see Lugo or talk with him.   On previous occasions Cortés had lent his automobile to Lugo so that he could take his family for a ride.   On the night of October 29, Mariano Rodríguez Virola was invited to take a ride by Arturo Ortiz.   They arrived at Lugo's house and found him in his bedroom, lying down; then Ortiz left the house and told his friends to wait for him there.   Lugo's wife and children were in the living room of the house.   Later on, an individual by the name of Juan Alicea Torres arrived at the house.   Alicea Torres was a witness at the trial and testified that Lugo had sent for him and had asked him to wait for Pedrosa to go to a "picnic".   About 11:30 at night Pedrosa also arrived at the house, and asked Lugo, who was still in his bedroom lying down, if he knew of someone who knew the road to ward "Macaná": Lugo answered negatively but at the same time he asked Rodríguez Virola if he knew the road, and Rodríguez answered affirmatively.   Afterwards the visitors left Lugo's house in an automobile which Román Cortés had left in those surroundings the previous day and they went to the house of a sister of Melitón Muñiz situated in the ward Macaná of Peñuelas.   Lugo stayed

home.[3]  Jesús Gutiérrez, a witness, testified that Lugo was the president of the Nationalist Party of Ponce; that in a meeting held at Melitón Muñiz' house, three weeks prior to the occurrence, Lugo delivered a speech and said that "when you come to a meeting at least bring a club" adding that Mr. Albizu Campos had had many expenses in public meetings and that they had to collect that money in order to deliver it to Albizu.

This is all the evidence presented by the People in order to prove that appellant Lugo acted in concert and in common agreement with the other co-defendants in the skirmish at ward Macaná of Peñuelas.  The evidence is insufficient.  Assuming that the testimony of Juan Alicea Torres, who testified that Lugo had sent for him to go with Pedrosa to a picnic, and the testimony of Mariano Rodríguez Virola who gave an account of the conversation between Pedrosa and Lugo concerning the Macaná road, connected defendant somehow with the crime charged, even so the evidence would always be insufficient because both witnesses are accomplices and their testimony in that respect has not been corroborated. *People* v. *Portalatín*, 63 P.R.R. 615.  The evidence does not connect Lugo with any plan directed to carry out the attack where six policemen were wounded.  In the absence of that or any other evidence which establishes beyond any reasonable doubt that Lugo acted in concert and common agreement with the assailants of the police, a verdict of conviction can not prevail on the facts charged in the information.  See Fricke, *Cal. Criminal Law*, pp. 70 and 71.

For the reasons stated the judgment as to Etanislao Lugo will be reversed and another rendered instead acquitting him. The judgment as to Melitón Muñiz Santos will be affirmed.

---

[3] Although Lieutenant José R. Rodríguez testified that Lugo had told him in the police station of Villalba that he had participated in the skirmish at Peñuelas, the prosecuting attorney as well as the *Fiscal* of this Court admitted that Lugo did not participate in the skirmish because at that time Lugo was at his home in Ponce.